UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
ANDRES MARTINEZ, MYROSLAVA VELYCHKO,         Case No.:
EMAN ABDELKARIM, and
NOEDITH ROJAS,

                               Plaintiffs,

              -vs.-                                           **COMPLAINT**
                                                             **WITH JURY DEMAND**
K & H RESTAURANT, INC. d/b/a RAFFLES
BISTRO, SCENTRE INC., ADEL KELLEL and
RAJESH MINOCHA,

                               Defendants.
-------------------------------------------------------------X

     Plaintiffs, ANDRES   MARTINEZ, MYROSLAVA VELYCHKO, EMAN

ABDELKARIM, and NOEDITH ROJAS, by and through their attorneys, the LAW

OFFICES OF WILLIAM CAFARO, complaining of the Defendants, and each of them,

hereby allege as follows:


### *THE PARTIES*


     1.    Plaintiff MYROSLAVA VELYCHKO (hereinafter "Plaintiff Velychko"

and/or "Ms. Velychko"), is an individual residing in Greenville, New York.


     2.    Plaintiff ANDRES MARTINEZ (hereinafter "Plaintiff Martinez" and/or "Mr.

Martinez"), is an individual residing in Queens, New York.


     3.    Plaintiff EMAN ABDELKARIM (hereinafter "Plaintiff Abdelkarim" and/or

"Ms. Abdelkarim"), is an individual residing in Brooklyn, New York

4.      Plaintiff NOEDITH ROJAS (hereinafter "Plaintiff Rojas" and/or "Ms. Rojas"), is an individual residing in West New York, New Jersey.

5.      Upon information and belief, Defendant K & H RESTAURANT, INC. d/b/a RAFFLES BISTRO, (hereinafter "Raffles") was and is a domestic corporation whose principal place of business is located at 511 Lexington Avenue, New York, NY 10017.

6.      Upon information and belief, Defendant SCENTRE INC., (hereinafter "Scentre") was and is a domestic corporation whose principal place of business is located at 244 Fifth Avenue, Suite C141, New York, NY 10001.

7.      Upon information and belief, Defendant ADEL KELLEL, (hereinafter "Kellel") is an individual, whose actual place of business is located at 511 Lexington Avenue, New York, NY 10017.

8.      Upon information and belief, at all times herein pertinent, Defendant Kellel, served as a principal, officer and/or manager of Defendants Raffles.

9.      Kellel is a "Principal" listed on the active New York State Liquor licenses for the premises doing business as Raffles.

10.     Upon information and belief, Defendant RAJESH MINOCHA, (hereinafter "Minocha") is an individual whose actual place of business is located at 244 Fifth Avenue, Suite C141, New York, NY 10001.

2

11.     Upon information and belief, at all times herein pertinent, Defendant Minocha served as a principal, officer and/or manager of Defendant Scentre.

12.     Upon information and belief, the gross receipts of Raffles, for each of the calendar years 2013 through 2015, inclusive, were not less than $500,000.00.

13.     Upon information and belief, for the calendar year 2016 the gross receipts of Raffles will not be less than $500,000.00.

14.     Upon information and belief, the gross receipts of Scentre, for each of the calendar years 2013 through 2015, inclusive, were not less than $500,000.00.

15.     Upon information and belief, for the calendar year 2016 the gross receipts of Scentre will not be less than $500,000.00.

16.     The Defendants Raffles and Scentre are part of a single integrated enterprise that has jointly employed the Plaintiffs at all times herein pertinent.

17.     At all times herein pertinent, the said Defendants' operations have been interrelated and unified.

18.     During all times herein pertinent, Raffles and Scentre have shared a common management, and have been centrally controlled and/or owned by Defendants.

19.      During all times herein pertinent, Defendants have centrally controlled the labor relations of the Raffles and Scentre.

20.      Upon information and belief, the two corporate defendants, Raffles and Scentre, are operated under common ownership and under common management for a joint business purpose, and as a joint enterprise.

21.      Upon information and belief the defendants Kellel and Minocha own all the beneficial interest in the corporate defendants Raffles and Scentre.

22.      Upon information and belief, the defendants Kellel and Minocha conduct substantially all the management functions of the defendants, Raffles and Scentre.

23.      Upon information and belief, the defendants Raffles and Scentre have operated in the manner outlined above for at least three years preceding the filing of this complaint.

24.      Upon information and belief, the aggregate gross receipts of Raffles and Scentre exceeded $500,000.00 in each of the calendar years 2013 through 2015, inclusive, and will exceed such amount in 2016.

\

### *JURISDICTION AND VENUE*

25.    Jurisdiction is based upon 28 U.S.C. § 1331, insofar as it involves a statute of the United States, specifically, the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, and Plaintiffs rely upon 28 U.S.C. § 1367 to invoke supplemental jurisdiction with respect to the state law claims which form another basis for recovery upon the same factual nexus, specifically Articles 6 & 19 of the Labor Law and 12 NYCRR § 142-2.2 and 12 NYCRR § 142-2.4.

26.    Venue is based upon 28 U.S.C. § 1391(b)(1), insofar as at least one of the Defendants resides within this Judicial District, and (b)(2), insofar as a substantial part of the events giving rise to the within causes of action occurred in this Judicial District.

### *FACTUAL ALLEGATIONS FOR ALL PLAINTIFFS*

27.    At all times herein pertinent, the Defendants, and each of them, were engaged in an industry having an affect on commerce within the meaning of 29 U.S.C. § 203.

28.    At all times herein pertinent, and in the course of their duties the Plaintiffs regularly handled products which had been moved in commerce.

29.    The Plaintiffs' primary duties did not include the exercise of discretion and independent judgment with respect to any matters of significance.

30.     Raffles operates as a restaurant inside The Lexington New York City, a hotel located in midtown Manhattan.

31.     Scentre operates as a restaurant management company.


**Defendants' Employer Status Under FLSA and NYLL**

32.     Upon information and belief, Defendants Kellel and Minocha each had the power to hire employees at Raffles and Scentre.

33.     Upon information and belief, Defendants Kellel and Minocha each had the power to fire employees at Raffles and Scentre.

34.     Defendants Kellel and Minocha each controlled the terms of the Plaintiffs' employment in that they would each tell the Plaintiffs what tasks to complete and on what time frame they needed to be completed.

35.     Upon information and belief, Defendants Kellel and Minocha each controlled the work schedule of all of the employees of Raffles and Scentre, including the Plaintiffs' work schedules.

36.     Upon information and belief, Defendants Kellel and Minocha each controlled the work schedules of all of the employees of Raffles and Scentre.

37.     Upon information and belief, Defendants Kellel and Minocha each controlled the rates and methods of payment of each of the employees of Raffles and Scentre, including the Plaintiffs' pay rates and methods of pay.

38.     Upon information and belief, Defendants Kellel and Minocha each controlled the rates and methods of payment of each of the employees of Raffles and Scentre.

39.     At all times herein pertinent, Plaintiffs performed their duties for Defendants Raffles and Scentre, at the direction and under the control of Defendants Kellel and Minocha.

40.     Upon information and belief, and at all times herein pertinent, Defendants Kellel and Minocha each exercised close control over the managerial operations of Raffles and Scentre, including the policies and practices concerning employees.

41.     At all times herein pertinent, Defendants Kellel and Minocha each controlled the terms and conditions of employment, supervised employees, made decisions as to hiring and firing and as to wages with respect to the employees of Raffles and Scentre in general, and with respect to the Plaintiffs in particular.

42.     At all times herein pertinent, Defendants Kellel and Minocha each acted as Plaintiffs' employers within the meaning of the FLSA and the New York State Labor Law.

7

**Wage and Hour Allegations**

43.     Throughout the duration of their employment at Raffles and Scentre, when Plaintiffs were paid by check, they received weekly paychecks from Defendants that did not properly record or compensate them for all the hours they worked.

44.     Defendants required Plaintiffs to perform work off-the-clock without compensation. Defendants maintained a policy and/or practice wherein management would regularly, and falsely, downwardly adjust the employees' hours so that the time falsely reflected that employees worked less than 40 hours in a given week, and/or substantially limited the amount of overtime actually shown in Defendants' records.

45.     Upon information and belief, during various time frames Defendants only paid the Plaintiffs in cash, so as to keep their unlawful practices "off the books" and to avoid having to meet various legal obligations under Federal and State law.

46.     Upon information and belief, Defendants "shaved" time from the total number of hours each of the Plaintiffs worked and recorded in their time records.

47.     Plaintiffs regularly worked for the Defendants in excess of forty (40) hours a week without receiving an overtime premium of one and one half times their regular rate of pay for those hours.

48.     Plaintiffs did not receive the statutorily required spread of hours.

8

**Defendants' Tip Sharing Violations**

49.     Defendants willfully violated both federal and state laws regarding tip-sharing.   As stated in more detail below, Defendants knowingly and willfully misappropriated and/or withheld a portion of Plaintiffs' tips, in direct contravention of the FLSA and New York Labor Law.

50.     Defendants had a policy and practice wherein management would receive part of the gratuity from sales of takeout orders.  Specifically, whenever a customer picked up a takeout order, and left any cash tips for the staff, this money was misappropriated by Defendants' managers.  Upon information and belief, this amounted to not less than $50.00 per day.

51.     Defendants further implemented an illegal and immoral scheme for defrauding foreign and out-of-state customers who dined at Raffles.

52.     Specifically, whenever such customers would come to the restaurant, defendants would add an 18% gratuity to the bills of these diners – even if just one person was dining – despite the fact that such gratuities were only supposed to be imposed for parties of four or more persons.  Many diners would fail to notice the automatic gratuity and would unwittingly pay a double tip to the restaurant.

53.     Despite receiving this excessive gratuity, Defendants would still deprive Plaintiffs of a percentage of the gratuities paid by these diners.

54.     Defendants also charged an additional $3.00 "service" charge on top of a mandatory 18% gratuity whenever guests in The Lexington New York City ordered room service from Raffles.  Defendants did not share any of these proceeds with any of the Plaintiffs herein.

55.     Defendants also charged an automatic 22% gratuity on all banquets and conferences at The Lexington New York City which were catered by the Defendants. Defendants did not share any of these gratuities with any of the Plaintiffs herein.

56.     Some guests of The Lexington New York City received vouchers for a free breakfast or lunch at Raffles upon presentment of a voucher.  The vouchers were collected by wait staff and included an automatic gratuity for the server.  Defendants collected but did not share any of these gratuities with any of the Plaintiffs herein.

57.     Upon information and belief, Plaintiffs were also charged an excessive credit card processing fee by Defendants with respect to those portions of their credit card tips which Plaintiffs actually did receive.

58.     Defendants failed to notify Plaintiffs in writing of the tip credit provisions of the NYLL, or of their intent to apply a tip credit to their wages.

59.     Upon information and belief Defendants failed to notify Plaintiffs either verbally or in writing of the tip credit provisions of the FLSA, or of their intent to apply a tip credit to their wages.

60.     As a result of the above two paragraphs, Defendants did not satisfy the requirements under the FLSA, and/or the NYLL in order to apply a tip credit to Plaintiffs wages.

61.     Upon information and belief Defendants failed to furnish Plaintiffs with proper annual wage notices, as required by the NYLL

62.     Upon information and belief Defendants are aware or should have been aware that federal law required them to pay tipped workers minimum wages for all hours worked and overtime premiums for all hours worked in excess of 40 per workweek.

63.     Defendants did not allow Plaintiffs to retain all the tips they earned.

64.     Upon information and belief Defendants unlawfully demanded, handled, pooled, counted, distributed, accepted, and/or retained portions of the tips that Plaintiffs earned.

65.     Defendants are not entitled to a tip credit due to their policies and/or practices regarding Plaintiffs' tips.

66.     The Defendants did not create or maintain accurate records showing the precise amounts of hours worked by Plaintiffs, and/or of the wages and tips they earned.

11

67.     Plaintiffs alternatively allege that Defendants created records showing the number of hours Plaintiffs worked, of wages or tips earned but upon information and belief, have not maintained them as required by law.


## *FACTUAL ALLEGATIONS AS TO PLAINTIFF* *ANDRES MARTINEZ*

68.     Mr. Martinez was employed by the Defendants from on or about the calendar year of 2007 and is currently still employed by defendants.


69.     Mr. Martinez is employed as a food server.


70.     Mr. Martinez worked from approximately January 1, 2010 until October 31, 2013, 6 days a week with Tuesdays off, from 2:30 pm until 12 am. At the beginning of this period, he was compensated at the rate of $25 per day in cash, and in the interim, it was raised to $30 per day.


71.     For the entire duration of his employment, defendants willfully deprived Mr. Martinez of a portion of the gratuities he earned and was lawfully entitled to receive.


72.     The credit card tip amounts Mr. Martinez received were consistently far below what customers had left for him.


73.     Defendants refused to give Mr. Martinez an explanation as to why the credit card tip amounts were below what customers had left for him.

74.     Defendants willfully failed and/or refused to allow Mr. Martinez to see credit card reports which reflect the actual amount of gratuities that customers had left on credit cards for wait staff.

75.     In response to Mr. Martinez' complaints about the Defendants' tip policies, Defendants repeatedly stated that tips were actually being split evenly amongst the wait staff.

76.     While Defendants stated tips were being split evenly amongst the staff, the Defendants were willfully and deliberately withholding a large portion of the wait staff tips for themselves, and this practice is continuing.


### FACTUAL ALLEGATIONS AS TO PLAINTIFF MYROSLAVA VELYCHKO

77.     Ms. Velychko was employed by the Defendants from on or about January 4, 2014 and is currently still employed by the Defendants.

78.     Ms. Velychko was and is employed by Defendants as a food server.

79.     For her first two weeks, Ms. Velychko worked 7 days per week from 6 AM until about 2:30 PM, and after that 6 days per week, until April 2014.

80.     From her date of hire until April. 2014, Ms. Velychko was compensated at the rate of $100 per day in cash, which included her credit card tips, with no explanation of

hourly rate or the manner in which this figure was arrived at. Her credit card tips were clearly in excess of $100 per day.

81.     Beginning in April of 2014, Ms. Velychko was compensated by check for "on the clock" work at the rate of $11.40 per hour, and from that point forward, at all times herein pertinent, she was compensated for all "on the clock" work at this rate by check.


82.      From April 2014 through August of 2014, Ms. Velychko worked from 6 AM until about 2:30 PM 5 days per week, but during this period worked a sixth day per week off the clock approximately one day per month. She was compensated for the extra day at the rate of $120, which included both her shift pay and her credit card tips. Her credit card tips for the shift clearly exceeded $120 per day.

83.     During September and October 2014, Ms. Velychko worked from 6 AM until about 2:30 PM, 7 days per week, but only punching in 5 days per week as directed by her supervisor.  She was similarly compensated for each "off the clock" day's work at the rate of $120, which included both her shift pay and her credit card tips. Her credit card tips for the shift clearly exceeded that amount.

84.     From November of 2014 through February 2015, Ms. Velychko worked the same hours 6 days every other week, not punching in on the 6th day of each week up until February of 2015, being compensated for the "off the clock" day at the same rate as in the preceding paragraph.

85.     From February 2015 to date, she has worked a double shift, 6AM through 10PM, on approximately one occasion per month, and on each such occasion, she received

$120 in cash, inclusive of her credit card tips, as compensation for the second half of the shift, and was paid by check at for the first half of the shift at the rate of $11.40 per hour.

86.     On approximately 12 occasions during the time Ms. Velychko has worked for Defendants, which included one week straight in February of 2015, she worked "banquet service", which consisted of delivering food to approximately 15 different hotel rooms, and a gratuity was automatically added to the bill. On these occasions, she worked from 6AM until approximately 9:30PM. She was compensated for 40 hours by check, and received $500 in cash for the one straight week in February 2015, which was inclusive of tips. Her share of the tips during this one week period clearly exceeded $500. On the other isolated occasions when she worked "banquet service", she was compensated at the rate of $100 for the extra shift, and received no tips at all. Each of the other isolated occasions involved over 40 hours per week of work time. Her share of the tips would clearly have exceeded $100 per shift. Each of the Plaintiffs also worked "banquet service", and were always deprived of their fair share of the tips they should have received.

87.     During the entire time Ms. Velychko has worked for Defendants, she also delivered room service to guests in the hotel numerous times on a daily basis. Although there was a gratuity added on to each room service check in the amount of 18%, plus a $3.00 service charge, she never received this amount or any portion thereof, nor did the other waitstaff who did room service deliveries.   Each of the Plaintiffs also made room service deliveries without receiving this gratuity or the service charge.

88.     For the entire duration of her employment, during her regular shifts in the restaurant, Defendants willfully deprived Ms. Velychko of a portion of the gratuities she earned which were paid by credit card, which she was lawfully entitled to receive.

15

89.     Throughout the entire time period covered in this complaint, the credit card tip amounts Ms. Velychko received were consistently far below what customers had left for her, and this was true for all of the Plaintiffs and all of the waitstaff.

90.     Defendants refused to give Ms. Velychko an explanation as to why the tip amounts were below what customers had left for her, and never gave her any complete or reliable record of her credit card tips.

91.     Defendants willfully failed and/or refused to allow Ms. Velychko to see credit card reports which reflect the actual amount of gratuities that customers had left on credit cards for wait staff.

92.     In response to Ms. Velychko's complaints about the Defendants' tip policies, defendants repeatedly stated that tips were actually being split evenly amongst the wait staff.

93.     While Defendants stated tips were being split evenly amongst the staff, the Defendants were willfully and deliberately withholding a large portion of the waitstaff tips for themselves, and this practice is continuing.

### *FACTUAL ALLEGATIONS AS TO PLAINTIFF EMAN ABDELKARIM*

94.     Ms. Abdelkarim was employed by the Defendants from on or about May 24, 2013 until December 1, 2013 and then rehired on or about February 14, 2014 and is currently employed by defendants.

16

95.     Ms. Abdelkarim is employed as a food server.

96.     Ms. Abdelkarim normally worked 6 AM to 3 PM, from on or about May 2013 until on or about December 1, 2013 she worked 7 days per week approximately 75% of the time, and 6 days per week the other 25% of the time.   During this period she was compensated at the rate of $125.00 per week plus cash tips.

97.     Upon her return in February of 2014, she worked 6 AM to 2:30 PM five days per week, and has no continuing overtime claim, but continues to claim for misappropriated tip disgorgement.

98.     For the entire duration of her employment, defendants willfully deprived Ms. Abdelkarim of a portion of the gratuities she earned and was lawfully entitled to receive.

99.     The credit card tip amounts Ms. Abdelkarim received were consistently far below what customers had left for her.

100.    Defendants refused to give Ms. Abdelkarim an explanation as to why the credit card tip amounts were below what customers had left for her.

101.    Defendants willfully failed and/or refused to allow Ms. Abdelkarim to see credit card reports which reflect the actual amount of gratuities that customers had left on credit cards for wait staff.

102.    In response to Ms. Abdelkarim's complaints about the Defendants' credit card tip policies, Defendants repeatedly stated that tips were actually being split evenly amongst the wait staff.

103.    While Defendants stated tips were being split evenly amongst the staff, the Defendants were willfully and deliberately withholding a large portion of the wait staff tips for themselves, and this practice is continuing.

### FACTUAL ALLEGATIONS AS TO PLAINTIFF NOEDITH ROJAS

104.    Ms. Rojas was employed by the Defendants from on or about October 16, 2013 and is currently employed by the Defendants.

105.    Ms. Rojas is employed as a food server.

106.    Ms. Rojas' work schedule during that week was 6 AM until 3 PM.

107.    During her first week working for Defendants, Ms. Rojas was compensated $25.00 per day.

108.    For the entire duration of her employment, defendants willfully deprived Ms. Rojas of a portion of the credit card gratuities she earned and was lawfully entitled to receive.

109.    The credit card tip amounts Ms. Rojas received were consistently far below what customers had left for her.

110.    Defendants refused to give Ms. Rojas an explanation as to why the credit card tip amounts were below what customers had left for her.

111.    Defendants willfully failed and/or refused to allow Ms. Rojas to see credit card reports which reflect the actual amount of gratuities that customers had left on credit cards for wait staff.

112.    In response to Ms. Rojas' complaints about the Defendants' credit card tip policies, Defendants repeatedly stated that tips were actually being split evenly amongst the wait staff.

113.    While Defendants stated tips were being split evenly amongst the staff, the Defendants were willfully and deliberately withholding a large portion of the wait staff tips for themselves, and this practice is continuing.

### AS AND FOR A FIRST CAUSE OF ACTION
### FEDERAL FAIR LABOR STANDARDS ACT
### AGAINST THE DEFENDANTS, AND EACH OF THEM
### (FAILURE TO PAY MINIMUM WAGE)

114.    Plaintiffs hereby incorporate all the preceding paragraphs of this complaint with the same force and effect as if fully set forth at length.

115.    All of the foregoing constituted willful and repeated violations of the Fair Labor Standards Act, so the applicable statute of limitations is three years pursuant to 29 U.S.C. § 255(a).

116.    The Defendants herein knowingly and willfully violated 29 U.S.C. § 206 by failing to pay the Plaintiff the applicable minimum wage.

### AS AND FOR A SECOND CAUSE OF ACTION
### FEDERAL FAIR LABOR STANDARDS ACT
### AGAINST THE DEFENDANTS, AND EACH OF THEM
### (FAILURE TO PAY OVERTIME)

117.    The Plaintiffs hereby incorporate all preceding paragraphs of this complaint with the same force and effect as if fully set forth at length.

118.    All of the foregoing constituted willful and repeated violations of the Fair Labor Standards Act, so the applicable statute of limitations is three years pursuant to 29 U.S.C. § 255(a).

119.    The Defendants herein knowingly and willfully violated 29 U.S.C. § 207 by failing to pay the Plaintiffs overtime pay at the premium rate of one and one half times the Plaintiffs regular rates of pay.

### AS AND FOR A THIRD CAUSE OF ACTION
### FAIR LABOR STANDARDS ACT
### AGAINST THE DEFENDANTS, AND EACH OF THEM
### (TIP SHARING VIOLATIONS)

120.    The Plaintiffs hereby incorporate all preceding paragraphs of this complaint with the same force and effect as if fully set forth at length.

121.    Defendants willfully failed to pay Plaintiffs the tips that they were entitled to receive.

122.    Defendants were not entitled to a tip credit, which would allow Defendants to compensate Plaintiffs at a reduced minimum wage because they failed to provide proper notice to all tipped employees that Defendants were taking a tip credit, and they also illegally retained a portion of the Plaintiffs' tips, thereby rendering the tip credit invalid.

123.    Defendants willfully and knowingly failed to pay wages and tips to Plaintiffs in violation of 29 U.S.C. §203.

### AS AND FOR A FOURTH CAUSE OF ACTION
### STATE MINIMUM WAGE ACT
### AGAINST THE DEFENDANTS, AND EACH OF THEM
### (FAILURE TO PAY MINIMUM WAGE)

124.    The Plaintiffs hereby incorporate all preceding paragraphs of this complaint with the same force and effect as if fully set forth at length.

125.    The Defendants herein willfully and in bad faith violated § 650 of the NYLL by failing to pay the Plaintiffs the applicable minimum wage.


### AS AND FOR A FIFTH CAUSE OF ACTION
### STATE WAGE AND HOUR LAW
### AGAINST THE DEFENDANTS, AND EACH OF THEM
### (OVERTIME)

126.    The Plaintiffs hereby incorporate all preceding paragraphs of this complaint with the same force and effect as if fully set forth at length.


127.    The Defendants herein knowingly and in bad faith violated  Articles 6 and 19 of the New York State Labor Law and 12 NYCRR §142-2.2 by failing to pay the Plaintiffs overtime pay at the premium rate of one and one half times the Plaintiffs' regular rates of pay.


### AS AND FOR A SIXTH CAUSE OF ACTION
### NEW YORK STATE LABOR LAW
### AGAINST THE DEFENDANTS, AND EACH OF THEM
### (SPREAD-OF-HOURS & SPLIT-SHIFT PAY)

128.    The Plaintiffs hereby incorporate all preceding paragraphs of this complaint with the same force and effect as if fully set forth at length.


129.    The Defendants herein knowingly, willfully and in bad faith violated Articles 6 and 19 of NYLL, and more particularly 12 NYCRR § 142-2.4, by failing to pay the Plaintiffs, one additional hour of pay at the prevailing minimum wage for each day during which there was a split shift and/or the spread of hours exceeded 10 hours.

22

### *AS AND FOR A SEVENTH CAUSE OF ACTION*
### *NEW YORK STATE LABOR LAW*
### *AGAINST THE DEFENDANTS, AND EACH OF THEM*
### *(TIP MISAPPROPRIATION)*

130.    Plaintiffs hereby incorporate all preceding paragraphs of this complaint with the same force and effect as if fully set forth at length.

131.    At all times herein pertinent, Plaintiffs were employees within the meaning of Article 6 NYLL §§190, et seq., and supporting New York State Department of Labor Regulations.

132.    At all times herein pertinent, Defendants were employers within the meaning of Article 6 NYLL §§190, et seq., and supporting New York State Department of Labor Regulations.

133.    The wage payment provisions of Article 6 of the NYLL and supporting New York State Department of Labor Regulations apply to the Defendants and protect the Plaintiffs.

134.    By the conduct described herein, Defendants made unlawful deductions from Plaintiffs wages in violation of Article 6 NYLL §193 and supporting New York State Department of Labor Regulations.

135.    Defendants unlawfully demanded and accepted, directly or indirectly, part of the gratuities received by Plaintiff in violation of Article 6 NYLL § 196-d and supporting New York State Department of Labor Regulations.

136.    Defendants unlawfully retained part of the gratuities earned by the Plaintiffs in violation of Article 6 NYLL § 196-d and supporting New York State Department of Labor Regulations.

137.    Defendants required Plaintiffs to share part of the gratuities they received with employees other than servers, bussers, runners, bartenders, or similar employees, in violation of Article 6 NYLL § 196-d and supporting New York State Department of Labor Regulations.

138.    Through their knowing or intentional demand for, acceptance of, and/or retention of part of the gratuities received by plaintiff, Defendants willfully violated Article 6 NYLL § 196-d and supporting New York State Department of Labor Regulations, including but not limited to 12 NYCRR §137-2.5.

139.    Defendants unlawfully demanded and accepted, directly or indirectly, part of the gratuities received by Plaintiff in violation of 12 N.Y.C.R.R. §146-2.20 and other supporting New York State Department of Labor Regulations.

140.    Defendants unlawfully retained part of the gratuities earned by the Plaintiffs in violation of 12 N.Y.C.R.R. §146-2.20 and other supporting New York State Department of Labor Regulations.

141.    Defendants required Plaintiffs to pay more than their pro-rate share of service charges taken by credit card companies for the processing of tips and/or gratuities in violation of 12 N.Y.C.R.R. §146-2.20 and other supporting New York State Department of Labor Regulations.

142.    Through their knowing or intentional demand for, acceptance of, and/or retention of part of the gratuities received by plaintiff in order to pay more than the pro-rata share of service charges taken by credit card companies for processing tips, Defendants willfully violated 12 N.Y.C.R.R. §146-2.20 and other supporting New York State Department of Labor Regulations.

### AS AND FOR AN EIGHTH CAUSE OF ACTION
### NEW YORK STATE LABOR LAW
### AGAINST THE DEFENDANTS, AND EACH OF THEM
### (FAILURE TO PROVIDE PROPER ANNUAL WAGE NOTICES)

143.    The Plaintiffs hereby incorporate all preceding paragraphs of this complaint with the same force and effect as if fully set forth at length.

144.    Defendants have willfully failed to furnish Plaintiffs with annual wage notices as required by NYLL, Article 6, § 195(1), in English or in the language identified by each employee as their primary language, at the time of hiring, and on or before February first of

each subsequent year of the employee's employment with the employer, a notice containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer in accordance with NYLL, Article 6, § 191; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

145.    Through their knowing or intentional failure to provide Plaintiffs with the annual wage notices required by the NYLL, Defendants have willfully violated NYLL, Article 6, §§ 190 et seq., and the supporting New York State Department of Labor Regulations.

146.    Due to Defendants' willful violations of NYLL, Article 6, § 195(1), Plaintiffs are entitled to statutory penalties of fifty dollars for each workweek that Defendants failed to provide Plaintiffs with proper annual wage notices, or a total of twenty-five hundred dollars each, reasonable attorneys' fees, costs, and injunctive and declaratory relief, as provided for by NYLL, Article 6, § 198(1-b).

### *AS AND FOR A NINTH CAUSE OF ACTION*
### *NEW YORK STATE LABOR LAW*
### *AGAINST THE DEFENDANTS, AND EACH OF THEM*
### *(FAILURE TO PROVIDE PROPER WAGE STATEMENTS)*

147.    The Plaintiffs hereby incorporate all preceding paragraphs of this complaint with the same force and effect as if fully set forth at length.

148.    Defendants have willfully failed to furnish Plaintiff with statements with every payment of wages as required by NYLL, Article 6, § 195(3), listing: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; and the number of regular and overtime hours worked.

149.    Through their knowing or intentional failure to provide Plaintiffs with the wage statements required by the NYLL, Defendants have willfully violated NYLL, Article 6, §§ 190 et seq., and the supporting New York State Department of Labor Regulations.

150.    Due to Defendants' willful violations of NYLL, Article 6, § 195(3), Plaintiffs are entitled to statutory penalties of one hundred dollars for each workweek that Defendants failed to provide Plaintiffs with proper wage statements, or a total of twenty-five hundred dollars each, reasonable attorneys' fees, costs, and injunctive and declaratory relief, as provided for by NYLL, Article 6, § 198(1-d).

## **DEMAND FOR TRIAL BY JURY**

151.    Plaintiffs demand a jury trial on all claims alleged in this complaint.

**WHEREFORE**, Plaintiffs pray for judgment as against the Defendants, and each of them, as follows:

27

a) awarding back pay for minimum wages due and owing to the Plaintiffs;

b) awarding back pay for overtime pay due and owing to the Plaintiffs;

c) awarding back pay for spread-of-hours and split-shift pay due and owing to the Plaintiffs;

d) reimbursement of all misappropriated tips and other unlawful deductions;

e) Declaring that Defendants violated the provisions of the NYLL relating to notice and record keeping requirements regarding employees, and awarding Plaintiffs statutory damages and any other relief authorized under the NYLL for violations of those requirements;

f) awarding liquidated damages pursuant to 29 U.S.C. § 216(b) and/or New York State Labor Law, Articles 6 & 19, §§ 198(1-a), 663(1);

g) awarding the costs and disbursements of this action, along with reasonable attorney's fees pursuant to 29 U.S.C. § 216(b) and/or New York State's Labor Law, Articles 6 & 19, §§ 198(1-a), 663(1);

h) awarding any other relief this Court deems just, proper and equitable.

Dated:  New York, New York
        March 8, 2016

                          Respectfully submitted,
                          LAW OFFICES OF WILLIAM CAFARO


                          _____
                          William Cafaro (wc2730)
                          Attorneys for Plaintiff
                          108 West 39th Street, Suite 602
                          New York, New York 10018
                          (212) 583-7400
                          bcafaro@cafaroesq.com
                          Our File No.: 52867-NYB

To:


K & H RESTAURANT, INC. d/b/a RAFFLES BISTRO
511 Lexington Avenue
New York, NY 10017

SCENTRE INC
244 Fifth Avenue, Suite C141
New York, NY 10001

ADEL KELLEL
511 Lexington Avenue
New York, NY 10017

RAJESH MINOCHA
244 Fifth Avenue, Suite C141
New York, NY 10001

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------X
ANDRES MARTINEZ, MYROSLAVA VELYCHKO,      Case No.:
EMAN ABDELKARIM, and
NOEDITH ROJAS,

                              Plaintiffs,

                 -vs.-

K & H RESTAURANT, INC. d/b/a RAFFLES
BISTRO, SCENTRE INC., ADEL KELLEL and
RAJESH MINOCHA,

                              Defendants.
--------------------------------------------------------------X

## COMPLAINT WITH JURY DEMAND

LAW OFFICES OF WILLIAM CAFARO
Attorneys for Plaintiffs
108 West 39th Street, Suite 602
New York, New York 10018
(212) 583-7400
File No. 52867-NYB